### UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**RAYMOND MITCHELL**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO.  14-2510**

**JAMES LEBLANC**                                          **SECTION "R"(5)**

### REPORT AND RECOMMENDATION

   This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

I.  *Facts and Procedural History*

   Petitioner, Raymond Mitchell, is a convicted inmate currently incarcerated at the Riverbend Detention Center in Lake Providence, Louisiana.[1]  The pertinent underlying facts were set forth on direct appeal:

> On April 2, 2008, at approximately 3:30 p.m., narcotics detectives of the New Orleans Police Department executed a search warrant at the home of Mitchell at 1426 Forstall Street in New Orleans. Mitchell had been observed days earlier

_____

[1] Rec. Doc. 18.

selling cocaine to an undercover informant. During that search, Mitchell directed officers to a night stand where both cocaine and heroin were recovered. Mitchell was arrested and charged with possession of cocaine with intent to distribute approximately two grams of cocaine and approximately one-half gram of heroin.[2]

On June 26, 2008, the State filed a bill of information that charged Mitchell with one count each of possession with intent to distribute heroin and cocaine.[3] Following a one-day bench trial held September 1, 2010, Mitchell was found not guilty of possession with intent to distribute heroin and guilty of possession of cocaine.[4] On January 31, 2011, the trial court sentenced Mitchell to three (3) years imprisonment.[5]

The State filed an habitual offender bill of information charging Mitchell as a fourth felony offender.[6] Following a hearing held April 7, 2011, the trial court found him guilty as a fourth felony offender, vacated his three-year sentence and resentenced him to twenty (20)

---

[2] *State v. Mitchell*, 2011-KA-1049, 2012 WL 4760309 (La. App. 4th Cir. May 10, 2012) (unpublished); State Rec. Vol. 2 of 3.

[3] State Rec., Vol. 1 of 3, Bill of Information.

[4] *Id.,* Minute Entry dated September 1, 2010.

[5] State Rec., Vol. 2 of 3, Transcript of sentencing hearing held January 31, 2011.

[6] State Rec., Vol 1 of 3, Multiple Bill of Information.  Mitchell was represented at trial by retained counsel, Robert Jenkins.  After sentencing, Mr. Jenkins filed a motion for appeal and withdrew as counsel of record. Mitchell was subsequently appointed new counsel, Clarke Beljean, to represent him for the habitual offender proceedings.

years imprisonment.[7]  On April 8, 2011, the trial court denied a request for new trial on the habitual-offender bill.[8]

On direct appeal, Mitchell asserted that the State failed to introduce sufficient evidence at his multiple-offender hearing to support the adjudication as a fourth felony offender.[9]  In particular, he argued the State failed to present sufficient evidence of the validity of a guilty plea to possession of cocaine on May 7, 1996, in case # 381-880, based on deficiencies in the waiver of rights form.  On May 10, 2012, the Louisiana Fourth Circuit rejected the claim and affirmed his conviction and sentence.[10]  Mitchell did not file a writ application with the Louisiana Supreme Court.

On or about October 24, 2012, Mitchell filed an application for post-conviction relief in the state district court.[11]  In that application, he raised three claims of ineffective assistance of counsel with respect to each attorney representing him at various stages of the litigation.

---

[7] State Rec., Vol. 1 of 3, Minute Entry dated April 7, 2011 (Multiple Offender Hearing); *see also* State Rec., Vol. 2 of 3, Transcript of Multiple Bill Hearing.

[8] State Rec., Vol. 1 of 3, Minute Entry dated April 8, 2011.

[9] State Rec., Vol. 2 of 3, No. 2011-KA-1049, Louisiana Fourth Circuit Appellant Brief.

[10] *State v. Mitchell*, 2011-KA-1049, 2012 WL 4760309 (La. App. 4th Cir. May 10, 2012).

[11] State Rec., Vol. 1 of 3, Uniform Application for Post-Conviction Relief signed October 24, 2012.  Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).  Presumably, the document could not have been placed in the mail any earlier than the date it was signed.

He asserted that his trial attorney failed to properly argue the motion to suppress, to reserve or request an appeal of the motion to suppress, and refused to share discovery with him or to provide requested information.  He alleged his counsel for the habitual-offender proceedings failed to protect his due-process rights and did not allow him to participate in his own defense. And he claimed his appellate counsel failed to secure transcripts and relevant portions of the trial court record for Mitchell's use and did not raise issues on appeal, namely the due-process violation that occurred during the multiple-offender hearing and the unconstitutionality of the search warrant.  On or about May 12, 2013, Mitchell filed a petition for writ of mandamus with the court of appeal because he had not received a ruling from the state district court on his application for post-conviction relief.[12]  On May 29, 2013, the court of appeal granted the writ for the limited purpose of transferring his application for post-conviction relief and motion for production of documents to the district court for consideration.[13]  As directed by the appellate court, the state district court considered the motion and application and denied relief on August 6, 2013.[14]

---

[12] State Rec., Vol. 3 of 3, Petition for a Supervisory Writ and/or Mandamus, No. 2013-K-0693.

[13] *Id.*, *State v. Mitchell*, 2013-K-0693 (La. App. 4th Cir. May 29, 2013) (unpublished).

[14] State Rec., Vol. 3 of 3, *State v. Mitchell*, 2013-K-1251 (La. App. 4th Cir. September 26, 2013) (attached minute entry dated August 8, 2013); *see also* State Rec., Vol. 1 of 3, Docket Master entry of August 6, 2013.  Mitchell filed a second "emergency application" for writ of mandamus seeking to compel the state district court's ruling; however, as the court of appeal noted in its ruling, the trial court had complied by rendering judgment.

On or about November 25, 2013, Mitchell filed a supervisory writ application with the court of appeal raising the same claims of ineffective assistance of counsel. The Louisiana Fourth Circuit denied relief on January 3, 2014.[15] On or about January 25, 2014, Mitchell filed a related writ application with the Louisiana Supreme Court. On October 3, 2014, the Louisiana Supreme Court denied relief without stated reasons.[16]

On October 20, 2014, Mitchell filed his federal application for *habeas corpus* relief, claiming that his attorneys were ineffective during trial, at the habitual-offender sentencing proceedings and on appeal, in the following respects: (1) trial counsel failed to properly argue the motion to suppress, to reserve or request an appeal of the motion to suppress, and refused to share the discovery with him or to provide requested information; (2) counsel for the habitual-offender adjudication failed to protect his due-process rights and did not allow him to participate in his own defense; and (3) appellate counsel failed to secure transcripts and relevant portions of the trial court record for Mitchell's use and did not raise on appeal the due-process violation that occurred during the multiple-offender hearing or the unconstitutionality of the search warrant.[17]

---

[15] State Rec., Vol. 3 of 3, *State v. Mitchell*, 2013-K-1657 (La. App. 4th Cir. January 3, 2014) (unpublished).

[16] *Id.*, *State ex. rel. Raymond Mitchell v. State*, 2014-KH-0215 (La. 10/3/14), 149 So.3d 790.

[17] Rec. Doc. No. 4, Petition.

The State filed a response in which it concedes that the federal application is timely and that Mitchell has exhausted his remedies in the state courts. The State argues that the claims should be denied on the merits.

## II. *General Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must

6

defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

A state-court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not

simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA." *Harrington v. Richter*, 562 U.S. 86 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. at 102; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

III. *Ineffective Assistance of Counsel*

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate

8

that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Matthewson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793. To prove prejudice with respect to a claim that appellate counsel was ineffective, a

9

petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir.2001); *see also Smith v. Robbins*, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. *Briseno*, 274 F.3d at 210.

The state district court summarily rejected Mitchell's ineffective assistance of counsel claims first raised in his state-court post-conviction relief application.  The appellate courts denied his related applications for supervisory writs without assigning reasons.  Because the state courts rejected his ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (citing *Burt v. Titlow*, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)).

10

A. *Pretrial and Trial Proceedings*

In his first two claims, Mitchell contends his trial attorney failed to argue effectively at the hearing on the motion to suppress and did not protect his right to appeal the unfavorable ruling. He maintains that although the search warrant was patently invalid on its face, his attorney failed to discover and address the glaring errors with Detective Durel during the motion hearing. These alleged errors include the date, address and an illegible magistrate signature on the search warrant. Mitchell submits that if counsel had raised these issues, his motion to suppress the evidence would have been granted.

At the hearing on the motion to suppress, Officer Todd Durel testified that based on his narcotics investigation conducted on or about March 31, 2008, he presented a search warrant application to the criminal magistrate. He stated that he personally prepared the application and the order of search in this case. During the hearing, the State prosecutor showed Officer Durel a copy of the search warrant application, return on search and order of search.[18] Upon review, he admitted that both the application and order contained an incorrect date. He explained that he made a typographical error when he used the date May 31, 2008, rather than March 31, 2008. He testified that the order was signed by the criminal magistrate on April 1, 2008 and executed on April 2, 2008. He further testified that he only discovered the mistake after the search warrant was executed when reviewing the police report in conjunction with

---

[18] State Rec., Vol. 2 of 3, Transcript of motion hearing, p. 4.

the proceedings.

Mitchell's trial counsel questioned Officer Durel at length regarding the discrepancy. He squarely addressed the officer's admission that he put the wrong date on the application and order of search and explored the circumstances surrounding the error.  Officer Durel was candid in conceding the mistake.  He explained that he did not bring it to the attention of his supervisor when he discovered the error, but he did inform a representative of the district attorney's office.  He also agreed with defense counsel that his review was limited to a copy rather than the original of the documents.

Defense counsel's performance cannot be considered objectively unreasonable under the circumstances. Defense counsel challenged the accuracy and validity of the search warrant based on the incorrect date that appeared on the application and order of search.  The officer described the admitted mistake, however, as a typographical error on his part.  The trial court evidently accepted the explanation and notwithstanding the typographical error deemed the warrant valid.  The trial court concluded that probable cause existed and denied the motion to suppress.

Mitchell correctly notes that the record does not include a copy of the State's Exhibit 1, *in globo*, introduced at trial, which included the two-page application for search, order of search and the return on the search warrant.  In support of his claim, Mitchell attached a copy

of an Order of Search, which he points out bears the date May 31, 2007 and not 2008.[19]  He

states he has been unable to obtain certified copies of the search warrant application and

order.[20]  Mitchell claims that counsel's failure to investigate the errors in the search warrant

and to argue that a mistake as to the month and year is not consistent with a mere

typographical error, as Detective Durel testified, constituted ineffective assistance.   No

comparison can be made of the search warrant application and warrant in this case.  But even

assuming that the search warrant application and warrant both refer to the wrong year as

well, this clearly still qualifies, contrary to Mitchell's argument, as a typographical or clerical

error— one already admitted by Officer Durel.  *See e.g., United States v. Guerrero*, 500 Fed.

Appx. 263, 264 (5th Cir. 2012); *United States v. Winkler*, 08-14, 2008 WL 5136463 (E.D. Tenn.

December 4, 2008).  Mitchell cannot show a reasonable likelihood that the outcome would

have been any different had counsel pointed out the additional discrepancy.  Defense counsel

specifically questioned the sufficiency of the warrant based on the fact that the affiant used the

---

[19] Rec. Doc. 4 (Exhibit 1).  Mitchell's search evidently revealed another prior application and order of search for the premises dated April 2007.  Though not related to the instant proceedings, he also included these as an attachment to his post-conviction pleadings and federal *habeas* application.

[20] Mitchell implies that his inability to obtain a certified copy of these documents despite repeated requests suggests the warrant was falsified and proves that police did not have a valid warrant, as was the case in *Mapp v. Ohio*, 367 U.S. 643 (1961), when prosecutors could neither produce a search warrant nor account for the failure to produce a warrant.  Rec. Doc. 4, p. 20.  His assertion is incredible considering the State readily produced the application and search warrant at the suppression hearing and trial of this matter.

wrong date in the search application and warrant and that argument was unsuccessful. The incorrect date on the application and warrant did not impact the finding that the facts presented in the affidavit, which Mitchell does not address, were sufficient to establish probable cause to search. *See United States v. White*, 356 F.3d 865, 868-69 (8th Cir.2004) (rejecting defendant's argument that search warrant "was facially invalid because of an incorrect date," because "the inconsistency between the date on the search-warrant application form and the date on the search warrant does not eliminate probable cause"); *Moreno v. Dretke*, 450 F.3d 158, 169 (5th Cir.2006).

Mitchell also complains that counsel did not challenge either the purported incorrect address or the criminal magistrate's illegible signature on the warrant. The warrant reflects the following description of the premises to be searched: "A blue house with dark blue trim *directly to the left of* 1434 Forstall Street." Mitchell argues that the warrant referenced an incorrect address of "1434 Forstall," rather than the location actually searched (*i.e.*, "1426 Forstall"). He claims this defect would have invalidated the warrant if raised during the suppression hearing.

The Fourth Amendment states that "[w]arrants shall ... particularly describ[e] the place to be searched." U.S. Const. Amend. IV. "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). First, contrary to Mitchell's suggestion, the warrant in this case did not incorrectly state the address to be

searched; it simply contained no municipal address for that particular location.  Second, although no municipal address was provided, the location was described with particularity as being situated directly to the left of 1434 Forstall.  The warrant also offered a description of the premises in sufficient detail so as to allow officers to locate and search the 1426 Forstall address.  When Officer Durel was cross-examined at trial about the address in the search warrant, he explained why the warrant contained a description of the premises rather than a municipal address and adamantly denied defense counsel's suggestion that he attempted to mislead the magistrate.[21]  Counsel cannot be deemed ineffective for failing to raise a non-meritorious argument in support of the motion to suppress.  He made a reasonable strategic decision not to challenge the address or description provided in the search warrant.  That decision cannot be considered deficient performance under *Strickland*.

Mitchell's assertion pertaining to the magistrate's signature is likewise unpersuasive.  He alleges only that the signature is illegible.  He submits that the failure to disclose the magistrate's name invalidates the search warrant.  He cites no legal support for this proposition.  Moreover, he presents nothing to suggest that the magistrate's signature was fraudulent.  The search warrant is clearly signed in the appropriate spot, and the fact that Mitchell was unable to read the signature on the warrant does not render it invalid.  Therefore, counsel had no basis for challenging the signature during the motion to suppress hearing.  His

---

[21] State Rec., Vol. 2 of 3, Trial transcript, pp. 16-19.

failure to do so under these circumstances cannot be considered deficient performance.

Nor can Mitchell establish prejudice.  He cannot show that the outcome of the hearing and trial would have been any different but for his counsel's failure to more vigorously challenge the search warrant. As previously discussed, it was not reasonably likely that raising the issues Mitchell cited would have altered the affirmative finding of probable cause. Furthermore, trial counsel obtained a favorable result for Mitchell after a bench trial — an acquittal for him on one count (*i.e.*, possession with intent to distribute heroin) and a responsive verdict of simple possession of cocaine on the other count.  Consequently, these claims do not warrant federal *habeas* relief.

Next, Mitchell asserts that counsel "failed to reserve or request an appeal on the motion to suppress," essentially failing to protect his right to appeal the issue.[22]  This claim is also without merit.  While a defendant who fails to file a motion to suppress or to object at trial to the admission of the evidence waives the right to assert the error on appeal, *see* La. C.Cr.P. arts. 703, 841, Mitchell's counsel filed a written motion to suppress. An evidentiary hearing was held. Counsel asserted, among other things, deficiencies in the search warrant application and the warrant itself.  The court issued an adverse ruling.  Following Mitchell's conviction, defense counsel filed a motion for appeal and designation of the record requesting transcripts of the

---

[22] Rec. Doc. 4, p. 21.

pretrial motions including the motion to suppress hearing.[23]  This process properly reserved Mitchell the right to appeal the denial of the motion to suppress.  Trial counsel withdrew after filing the notice of appeal.  Appellate counsel made the determination regarding whether or not to present the claim on appeal.  Trial counsel's performance was not deficient and did not result in prejudice.  Mitchell has failed to establish that he is entitled to *habeas* relief on this claim.

Mitchell's final two assertions with respect to trial counsel allege that he failed to share the discovery file with him or to provide him with requested information.  He briefs these arguments together, arguing that counsel failed in his duty to keep him reasonably informed so that he could participate in his defense.  Although he does not specify the pretrial discovery or particular information he requested from counsel, he claims that if he had access to the file materials he would have pointed out the deficiencies in the search warrant. Mitchell implies that he could have provided himself a better defense than counsel, who failed to discover the deficiencies in the warrant, and presumably would have obtained a successful result on the motion to suppress.  As previously discussed, however, the result would have been no different had the additional discrepancies alleged by Mitchell been raised by the defense. Therefore he has failed to establish how he was prejudiced by counsel's failure to share discovery and provide him information.

---

[23] State Rec., Vol. 1 of 3, Motion for Appeal & Designation of Record (Jenkins).

B. *Multiple-Offender Hearing*

Mitchell claims that newly appointed counsel, who represented him at the multiple-offender hearing, failed to protect his due-process rights. His argument is premised upon what he refers to as the trial court's "sudden change of position" in accepting the State's proof and declaring him to be a fourth felony offender.

The transcript of the habitual-offender proceedings reflects that after the State presented its evidence, the trial court stated it found the proof lacking as to one of the four underlying predicate offenses, a 1996 guilty-plea conviction for possession of cocaine. The trial court was prepared to declare him a triple offender. Defense counsel objected because then two of the predicate offenses would not link within the ten-year time frame to the present conviction. The trial court immediately reversed its factual finding and declared him to be a quadruple offender. In doing so, the trial court commented, "Sometimes you need to keep your mouth shut, Mr. Mitchell," in all likelihood referring to the defense in general and his attorney of record rather than Petitioner who had not commented.[24] In his federal *habeas* application, Mitchell argues that "any reasonable attorney would have alerted the presiding Judge as to the fact that simply changing his mind just to deny an accused of his rights was impulsive and contrary to the evidence presented and so was an abuse of discretion."[25]

---

[24] State Rec., Vol. 2 of 3, Transcript of multiple offender hearing, pp. 26-29.

[25] Rec. Doc. 4, p. 25.

18

The propriety of the trial court's decision is not at issue here.[26]  Only counsel's actions in response to the ruling must be considered in analyzing whether or not he rendered ineffective assistance.  The record reflects that counsel's actions were entirely proper.  In fact, Mitchell concedes defense counsel objected to the ruling and imposition of sentence.[27]  Counsel then filed a motion for a new trial on the multiple offender bill.[28]  The motion was denied.  Counsel also promptly filed a second notice of appeal and motion for designation of record, preserving Mitchell's right to appeal the habitual-offender sentencing proceedings.[29]  Thus, Mitchell had an available remedy on appeal to assign error pertaining to the multiple offender adjudication.  The record demonstrates that counsel challenged the trial court's ruling and preserved Mitchell's right to appeal.  The mere fact that the challenge proved unsuccessful does not establish deficient performance.  Mitchell is not entitled to *habeas* relief on this claim.

---

[26] In fact, on direct appeal the Louisiana Fourth Circuit upheld the trial court's ruling by soundly rejecting the assigned error that the State failed to present sufficient evidence of the validity of a guilty plea by Mitchell on May 7, 1996, to possession of cocaine, in case #381-880, where the evidence consisted of a waiver of rights form that was neither signed by the judge nor dated by anyone, and where the evidence did not include a minute entry or transcript showing a waiver of rights. *State v. Mitchell*, 2012 WL 4760309 at *3-4.  Mitchell did not seek review of this decision to the Louisiana Supreme Court.

[27] *Id*. at 16; *see also* State Rec., Vol. 2 of 3, Transcript of multiple offender hearing, pp. 29-30.

[28] State Rec., Vol. 2 of 3, Motion for New Trial on the Habitual Offender Bill of Information.

[29] State Rec., Vol 1 of 3, Minute Entry dated April 8, 2011; State Rec., Vol. 2 of 3, Motion for Appeal and Motion for Designation of Record (Beljean).

Mitchell fails to brief his claim that counsel was ineffective for failing to allow him to participate in his own defense during the habitual-offender hearing.  Again he appears to contend simply that he could have done a better job than defense counsel.  He presents nothing to show that he was deprived of the right to participate in his defense, or if so, how his defense was impaired.  The record lends no support for his claim and his petition actually contradicts his assertion that he was not allowed to participate.  His memorandum in support alleges, "through counsel he filed objections to the multi-bill and that he filed pro se motions for discovery, inspection and bill of particulars, in which he requested transcripts in support of any prior pleas."[30]  Mitchell fails to establish deficient performance or prejudice under *Strickland*. This claim does not warrant *habeas* relief.

C. *Appellate proceedings*

Mitchell contends appellate counsel was ineffective for failing to provide him a copy of the appellate record so that he could file a *pro se* brief on appeal.  He also claims that appellate counsel should have assigned as error the fact that the trial court abused its discretion and denied him due process during the habitual offender adjudication and that the search was unconstitutional based on defects in the search warrant.

Mitchell was represented by assigned appellate counsel, who filed an appellate brief

---

[30] Rec. Doc. 4, p. 15; State Rec., Vol. 1 of 3.

on his behalf with the Louisiana Fourth Circuit Court of Appeal.[31] His assertion that he was deprived of a right to submit a *pro se* supplemental brief is misplaced. *See Scott v. Michael*, 08-1262, 2011 WL 1235223, at *12 (E.D. La. March 21, 2011). A criminal defendant does not have a constitutional right of self-representation on direct appeal. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 164 (2000). Further, if a criminal appellant accepts assistance of counsel and subsequently disagrees with counsel's strategy or brief preparation, the appellant "cannot then expect to be allowed to file a supplemental pro se brief." *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir.1996) (citing *McKaskie v. Wiggins*, 465 U.S. 168, 18283 (1984)). As such, a criminal appellant "waives his right to present pro se briefs on direct appeal" via his acceptance of assistance of counsel. *Id.*

Regardless, Mitchell cannot demonstrate the requisite prejudice under *Strickland*. He alleges that prejudice ensued because he was unable to file a *pro se* brief to bring up the defects in the search warrant. However, he fails to establish a reasonable probability that, but for being deprived of the ability to assert this claim in a *pro se* brief on direct appeal, he would have prevailed on appeal.

Mitchell also fails to show that by omitting the two claims at issue, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised a substantive claim on direct appeal that the evidence was insufficient to find

---

[31] State Rec., Vol. 2 of 3, Appellant Brief (Aberle).

Mitchell guilty as a fourth-felony offender. It is within appellate counsel's sound discretion and judgment when filing an appellate brief to determine which nonfrivolous arguments to raise, and the scope thereof, in order to maximize the likelihood of success on appeal. Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983); *see also Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (observing that the "process of 'winnowing out weaker arguments on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy'") (quoting *Jones*, 463 U.S. at 751–52); *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (observing that "the Constitution guarantees criminal defendants a fair trial and a competent attorney [but] does not insure that defense counsel will recognize and raise every conceivable constitutional claim"). Here, the court of appeal rejected the claim on the merits, finding that the State had satisfied its burden of proof with respect to the same predicate offense that the trial court had initially rejected for failure of proof, but later accepted. Regardless of how or by whom the claim was asserted or framed, it nonetheless would not have prevailed on direct appeal. His claim with respect to the unconstitutionality of the search warrant, as previously addressed, likewise is without merit. Mitchell cannot show that he was prejudiced by counsel's conduct because the underlying claims lack merit. *Habeas* relief is not warranted for these claims.

In sum, Mitchell has not demonstrated that the state court's decision rejecting these

ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

**RECOMMENDATION**

**IT IS RECOMMENDED** that Mitchell's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[32]

New Orleans, Louisiana, this 17th day of February , 2016.

MICHAEL B. NORTH<br>
UNITED STATES MAGISTRATE JUDGE

---

[32] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.